IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division



| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: an **Apple iPhone XR, serial number DX3FV9LCKXKN,** currently located at the FBI Richmond Field Office, located at 1970 E. Parham Rd, Richmond, Virginia. | Case No. ___3:22sw166___ |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Special Agent David Gonzalez, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice, and have been since October 2019.  I am assigned to the Richmond Field Office of the FBI in Richmond, Virginia, and am responsible for conducting investigations pertaining to child exploitation and human trafficking.  As part of my duties, I have received training regarding the investigation of Federal crimes including, but not limited to, crimes against children, human trafficking, civil rights, and public corruption. By virtue of my employment with the FBI, I have performed a variety of investigative tasks including conducting

1

arrests and executing Federal search warrants.  As a Special Agent, I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7).

3.        In the course of my employment as a sworn law enforcement officer, I have participated in the execution of numerous search warrants resulting in the seizure of computers, magnetic storage media for computers, other electronic media, and other items evidencing violations of state and federal laws, including various sections of Title 18, United States Code, Sections 2252 and 2252A involving child exploitation offenses.

4.        This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.  The information provided is based upon my personal knowledge, or that of other sworn law enforcement officers participating in this investigation.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.        The property to be searched is: one (1) **Apple iPhone XR, serial number DX3FV9LCKXKN** (hereinafter referenced as the SUBJECT DEVICE).

6.        The SUBJECT DEVICE was seized on August 30, 2022, by FBI Agents from TARRELL BASS at the time of his arrest on a warrant issued by the Eastern District of Virginia in conjunction with an indictment charging him with Attempted Sex Trafficking of a Minor, in violation of 18 U.S.C. §§ 1591 and 1594, Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b), and Travel with Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b).

7.        The SUBJECT DEVICE is currently stored at the FBI Richmond Field Office located at 1970 E. Parham Road, Richmond, Virginia 23228.

2

8.     The applied-for warrant would authorize the forensic examination of the

SUBJECT DEVICE for the purpose of identifying electronically stored data particularly

described in Attachment B.

## TECHNICAL TERMS

9.     Based on my training and experience, I use the following technical terms to

convey the following meanings:

a.     **Smartphone:** A portable personal computer with a mobile operating system
having features useful for mobile or handheld use.  Smartphones, which are
typically pocket-sized (as opposed to tablets, which are larger in measurement),
have become commonplace in modern society in developed nations.  While the
functionality of smartphones may vary somewhat from model to model, they
typically possess most if not all of the following features and capabilities: 1) place
and receive voice and video calls; 2) create, send and receive text messages;
3) voice-activated digital assistants (such as Siri, Google Assistant, Alexa,
Cortana, or Bixby) designed to enhance the user experience; 4) event calendars;
5) contact lists; 6) media players; 7) video games; 8) GPS navigation; 9) digital
camera and digital video camera; and 10) third-part software components
commonly referred to as "apps."  Smartphones can access the Internet through
cellular as well as Wi-Fi ("wireless fidelity") networks.  They typically have a
color display with a graphical user interface that covers most of the front surface
of the phone and which usually functions as a touchscreen and sometimes
additionally as a touch-enabled keyboard.

b.     **IP Address**: An Internet Protocol address (or simply "IP address") is a unique
numeric address used by computers on the Internet.  An IP address is a series of
four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).
Every computer attached to the Internet computer must be assigned an IP address
so that Internet traffic sent from and directed to that computer may be directed
properly from its source to its destination.  Most Internet service providers control
a range of IP addresses.  Some computers have static—that is, long-term—IP
addresses, while other computers have dynamic—that is, frequently changed—IP
addresses.

c.     **Internet**: The Internet is a global network of computers and other electronic
devices that communicate with each other.  Due to the structure of the Internet,
connections between devices on the Internet often cross state and international

3

borders, even when the devices communicating with each other are in the same state.

10.    Based on my training, experience, and research I know that the SUBJECT DEVICE has capabilities that allow it to access the internet and serve as a smartphone.

## PROBABLE CAUSE

11.    The United States, including the Federal Bureau of Investigation, is conducting a criminal investigation of TARELL AMI BASS regarding alleged violations of 18 U.S.C. §§ 1591 and 1594 (Attempted Sex Trafficking of a Minor), 2422(b) (Attempted Coercion and Enticement), and 2423(b) (Travel with Intent to Engage in Illicit Sexual Conduct).

12.    As part of an undercover operation conducted by the FBI Richmond Regional Human Trafficking Task Force (RRHTFF), an online covert employee (hereinafter OCE) created an ad on the website MegaPersonal.  MegaPersonal is a personal classified ads website on which many users advertise escort and prostitution services.  The OCE's ad was titled "Looking for a good daddy."  The ad was specifically worded to target those who seek to recruit females into the commercial sex trade.  The ad included a picture of a female in bed wearing a gray sweater.  The female's face was covered for anonymity purposes.  The ad included a phone number, with a Richmond, Virginia area code, to contact the OCE.  The ad was posted in the city of Philadelphia, Pennsylvania.

13.    On April 25, 2022, at approximately 7:36 p.m., an individual using phone number **216-468-2483** contacted the OCE.  As explained below, investigators have determined that the likely user of this telephone number was the subject, TARELL BASS.  This phone number is hereinafter labeled as "BASS 1."  The person asked if the OCE needed help and stated he was

4

not a pimp but had clients for the OCE to see if interested.   The following text messages were received from the phone number aforementioned:

- BASS 1:  Hello

- OCE:  Hi

- BASS 1:  Need some help?

- BASS 1:  Cam show were where the bag at

- BASS 1:  Not a pimp tho

- BASS 1:  You available

- BASS 1:  Can drive and house

- BASS 1:  clients now if interested

14.     Later that day, at approximately 10:25 p.m., the person followed up with message to let him know if the OCE was interested.

15.     Simultaneously, on April 25, 2022, at approximately 10:25 p.m., the OCE received a text message from a different phone number, **267-993-8951**.  As discussed in this affidavit, investigators have determined that TARELL BASS using the alias "CC" was also the likely user of this telephone number.  **This number is hereinafter labeled as "CC."**  The person using this phone number initiated the conversation with "Hello," "Playboy said you looking to join a team."  The following day April 26, 2022, at approximately 6:37 a.m., the person stated that "her" name was "CC" and stated that "she" had a pimp named "Playboy" who wanted the OCE to "join the team."  In the following massage exchange, CC stated Playboy would pick the OCE up and the OCE would have to have sex with Playboy as soon as the OCE met with him. CC stated Playboy would house the OCE and several other women.

- CC:  Let's go have coffee

5

- CC:  Want to see where your skills at (emoji with dollar signs)

- CC:  Can have playboy pick u up?

- CC:  Come to our crib?

- CC:  You in or out love

- CC:  Morning the best rush

- CC:  You down or what?

- CC:  You should come can take playboy dick in the truck (emoji with hearts)

- CC:  What area are u in?

- CC:  And want his number?

- CC:  Listen you can't be scared in this game

- CC:  And we give spot to stay

- CC:  Pimp finds out to scared and not listening not a good look

16.     Simultaneously, on April 26, 2022, at 6:37 a.m., the OCE received a series of messages from the first phone number, BASS 1, indicating they were looking for a new girl to put in the "game."   The OCE received the following text messages from the phone number labeled as BASS 1:

- BASS 1:  You want to meet up

- BASS 1:  Would love to put u on

- BASS 1:  Well we need a white girl

- BASS 1:  Come chill we can show you the ropes

- BASS 1:  Most let are [sic] dude fuck first

- BASS 1:  Hello

- BASS 1:  Looking for a new girl to put in game

- BASS 1:  500

- BASS 1:  You available

- BASS 1:  And I'll make sure u good

17.      Due to the similar verbiage used in the text messages received from both phone numbers, investigators suspected that both phone numbers belonged to the same person. Because of this suspicion, the OCE did not engage in conversation at that time with BASS 1.  An administrative subpoena was served on the two phone numbers, **267-993-8951** and **216-468-2483**.  Information received from T-Mobile indicated both phone numbers were registered under the same user, Mancoon CEO, registered address 211 Willier Dr. Willamton, PA 08141.  Based on open-source queries this does not appear to be a valid address.

18.      Later in the conversation, on April 26, 2022, at approximately 6:52 a.m., the OCE asked CC what she would have to do and how much money she would make if she were to go with CC and Playboy.  CC told the OCE could make $1000 per night and that the amount she could keep would depend on how well she "listened":

- OCE:  But I wanna know what I'm gonna have to do before I come up there. Like what and how much money can I make.  I never done this before

- CC:  You going have to see playboy

- CC:  And u can make 1,000 easy every night

- CC:  Depends on you

- OCE:  Really?!!

- CC:  Of course

- CC:  Were you from?

- OCE:  How much of that do I get to keep?

- CC:  Depends if you listen or not

- CC:  Most of it tho

19.     The OCE then stated she was almost 17 years old.  CC then continued by stating

that Playboy would pick her up now and would have to "break" the OCE in:

- OCE:  I would need somebody to come get me.  But I ain't gonna lie to nobody I'm almost 17.  I don't want nobody getting mad when they get here, I'm good tho

- CC:  Ok

- OCE:  (sent picture of female wearing a green sweater)

- OCE:  I'm good

- CC:  You only 16?

- OCE:  Yeah

- OCE:  But I look older

- CC:  You ready now?

- CC:  You have to let him break u in fucking wise

20.     CC then sent three pictures.  One depicted a black female wearing red lingerie.

Another picture depicted a side shot of a female wearing blue lingerie.  The third picture depicted

a side picture of two naked females.  CC claimed to be one of the females in the picture.  CC said

"Ash" and "mink" were the other females in the pictures.

21.     The OCE then told CC that she would only have sex with clients if they wore

condoms.  The OCE also stated that she would not have anal sex.  CC responded that clients

would wear condoms and the OCE would only have unprotected sex with Playboy.

8

22.     Later in the conversation, CC sent the following picture of a shirtless black male wearing a gold cross chain and several distinctive tattoos on his chest and arms.



23.     The picture did not show the person's face.  CC explained why:

- CC:  (sent picture of shirtless black male with multiple tattoos)

- CC:  You know we in Philly?

- CC:  You in Richmond va?

- CC:  He said he wants to come get u now

- CC:  Would show his face but u young (eye emoji)

24.     The OCE then told CC she just needed to pack something and would be ready to go.  CC told the OCE she did not need to pack anything because Playboy "dolls up" his prostitutes:

- OCE:  I got a pack some things and come up with an excuse for my sister.

- OCE:  OK I understand

- CC:  She leaving I thought

- OCE:  I know but she's gonna come home and I'm not gonna be there

- OCE:  How long will it take you to get here?

- CC:  Depends what part u in

- CC:  Like 3-4 hours

- CC:  You don't need to pack anything

- CC:  He dolls use up (emoji with hearts)

Later in the conversation, on April 26, 2022, at approximately 7:15 a.m., CC explained why the OCE did not need to pack clothing:

- CC:  You only need panties

- CC:  He takes u shopping

- CC:  Ok

- CC:  Just grab panties and bras

25.    The OCE asked how many clients she would be seeing if she were to come with Playboy.  CC responded as follows:

- OCE:  How many do you see?

- CC: For now you a home body

- OCE:  What's that mean?

- CC:  He has to break u in (cat with heart eyes emoji)

- CC:  You not going to flip guys until you ready

- CC:  I see 3

10

26.      As the conversation continued on April 26th, CC asked the OCE for pictures and sent a video of a female wearing a gray sweater and no bottoms "twerking."  CC asked the OCE to "loosing up" and requested "body pictures."  The OCE then sent a picture of a female wearing a blue t-shirt and black pants.  CC then requested naked pictures of the OCE.

- CC:  You have body pictures

- CC:  I'm getting wet (cat with heart eyes emoji)

- OCE:  (sent picture of a female wearing a blue t-shirt and black pants, the female's face is not visible)

- CC:  Can't wait to do your nails

- OCE:  Yeah I'm on look like shit right now LOL

- CC:  No you gorgeous

- OCE:  No Way.  You are a lot more prettier than me

- CC:  You not even trying look sexy show some skin

- CC:  He wants to come make love to you (emoji with hearts)

- CC:  And then come back in the am

- CC:  I want to see you look naked (emoji with dollar signs on face)

The OCE later sent CC a picture of a female in bed wearing green lingerie.  The female's face was not visible.

27.      The afternoon of April 26th at approximately 2:25 p.m., CC asked the OCE for an address to pick up the OCE.  The OCE sent the address of a Richmond shopping center located at 1228 Concord Ave. Richmond Virginia.  Shortly thereafter, an individual who identified himself as "Playboy" started texting the OCE from the same phone number as CC.

The rest of the text message conversation was between the OCE and Playboy.  Playboy advised the OCE, he would head down to pick up the OCE.

- OCE:  When do you think I get here?  It's raining like fuck lol.

- Playboy:  In a few

- Playboy:  I can hit when I am like 10 minutes away

- OCE:  Ok

- OCE:  Is this playboy?

- Playboy:  Yes

- Playboy:  You ready love?

**Phone calls**

28.     Between April 27, 2022, and April 28, 2022, a female undercover employee (UCE) conducted a series of consensual monitored phone calls with Playboy at the phone number labeled as "CC."  The conversation with Playboy alternated between text messages and phone calls.  A summary of the phone calls can be found below:

- April 27, 2022 – 8:12 p.m.:  Playboy asked if the UCE sent the address. Playboy told her he was going to look up the address now and that he was coming to pick her up.

- April 28, 2022 – 11:46 a.m.: Playboy asked why the UCE took so long to call him back. Playboy asked why the UCE didn't have an iPhone. Playboy told the UCE he was going to fix that, referring to the UCE having an iPhone. Playboy said he should be in the Richmond area around 6 p.m.

- April 28, 2022 –2:39 p.m.:  Playboy advised he was going to pick up the UCE on that date.  Playboy told the UCE they were going to get to know one another and the UCE would love him by the end of the night. Playboy said he was in Pittsburgh, Pennsylvania, and asked if the UCE wanted to stay there or start driving home.  The UCE asked if Playboy was cool with the UCE being 16. Playboy stated CC said the UCE was turning 17 in June.  Playboy said he did not

12

want to drive down to Richmond if the UCE wasn't serious.  Playboy stated he wasn't a pimp and wasn't going to pimp the UCE out.  Playboy stated since the UCE was so young he didn't want to put the UCE out there just yet but he wanted the UCE to see how it worked.  Playboy stated he wanted the UCE to see the difference between what a pimp does and what he does.

- Playboy told the UCE she had to be a sexual person and had to like having sex.  Playboy said it could mess up the UCE's head.  Playboy indicated he had seen girls hang themselves.  Playboy stated he didn't want to bring the UCE down but wanted to bring the UCE up.  Playboy told the UCE to pack panties, bras and dresses and requested the UCE to take a picture in the dress and he would decide yes or no on the dress.

- April 28, 2022 – 6:59 p.m.:  Playboy told the UCE he would be there around midnight.  He said it was a 10-hour ride.  He said he couldn't wait for the UCE to get an iPhone.

- April 28, 2022 – 10:12 p.m.:  Playboy told the UCE he had a Cadillac Escalade truck.  Playboy said he needed a truck for all the places they go.  Playboy said he should have reserved the room for the night and indicated that CC was with him.

- April 28, 2022 – 11:21 p.m.:  Playboy told the UCE he was almost there.  Playboy told the UCE he would make the UCE Cash App, Zelle, Venmo and PayPal accounts.  The UCE asked if Playboy would let her keep some of the money.  Playboy said yes, it was a team thing and not an "I" thing.  Playboy indicated him and his females had all been together for 10 years and explained one of the females had been with them for three years.  Playboy said the goal was to get one big house and live like rock stars.

**BASS's Travel to Richmond, Virginia, and Identification as "Playboy"**

29.    On April 26, 2022, FBI analysts conducted an open-source search for the name Tarell Bass on Facebook.  A Facebook profile was identified under that name.  The Facebook account profile indicates Bass is from Levittown, Pennsylvania, and currently lives in Philadelphia.  The Facebook account profile picture depicts the image of a male's chest with several distinctive tattoos.  The tattoos and body type in the Facebook profile picture appear to visually match the tattoos and body type in the picture sent by "CC" (see paragraph 22).  The

profile picture was later updated and depicted a shirtless black male wearing a red hat standing in front of a bathroom mirror.  The Facebook profile picture is depicted below:



30.     A law enforcement database search of "CC's" phone number **267-993-8951**, which Playboy used to communicate with the OCE, revealed that number was registered to TARELL AMI BASS, date of birth ▮▮▮/1987, home address 5720 Fleetwing Dr Levittown, PA, 19057.  The search indicated that a Fletcher A Bass Jr. living at the same address was as a possible relative.  A search for Tarell BASS on Pennsylvania DMV yielded the following results: Tarell A Bass, date of birth ▮▮▮/1987, home address 5720 Fleetwing Dr Levittown, PA, 19057.

31.     On April 28, 2022, at approximately 10:13 a.m. Playboy messaged the OCE to say that he had to make a stop in Ohio but would be headed Richmond soon.  The OCE asked Playboy if he would stay in Richmond.  Playboy said they could and asked the OCE for a

recommendation for a place to stay.  The OCE sent him the address of a hotel located in Henrico, Virginia.  Playboy also told the OCE he had a surprise for the OCE.

32.     On April 28, 2022, at approximately 5:43 p.m., Playboy messaged that he was on his way to Richmond to pick up the OCE.  Later that day, on April 28, 2022, at approximately 9:16 p.m.  Playboy said he would be there at around 11:30 p.m.  At approximately 11:47 p.m., however, Playboy sent a message stating that he was in a Sheetz in Cumberland.  An open-source search with the information provided by Playboy indicated he was in Cumberland, Maryland.  On April 29, 2022, at approximately 3:41 a.m., Playboy messaged the OCE that he had arrived, and he would sleep in his vehicle.  Later that day, at approximately 7:07 a.m., Playboy said he was going to leave since he had been waiting for the OCE since 2 a.m.  At 9:08 a.m., Playboy messaged to say his car broke down and he was at a Wawa gas station located at the following address 10373 Sliding Hill Rd, Ashland, Virginia 23005.

33.     On the morning of April 29, 2022, an FBI Task Force Officer (TFO) conducted surveillance at the Wawa gas station located at 10373 Sliding Hill Rd, Ashland, Virginia, where Playboy had stated he was located with his broken-down car.  The TFO observed a black male in a red Cadillac Escalade, which is the type of car that Playboy had stated during a recorded call that he was driving (see paragraph 28 (e)).  The TFO visually identified the driver of the Cadillac Escalade, who is depicted in the surveillance photograph below, as TARELL BASS:



34.     The Cadillac Escalade bore Pennsylvania license plate GFF-0037.  A law enforcement database query of this license plate number indicated that the vehicle is registered to Fletcher Bass, 5720 Fleetwing Dr, Levittown, Pennsylvania 19057.

35.     On June 7, 2022, a TFO from the FBI Pennsylvania Field Office conducted physical surveillance on 5720 Fleetwing Dr, Levittown, Pennsylvania 19057.  At approximately 11:20 a.m. BASS was observed removing lawn equipment from a red Cadillac Escalade license plate GFF-0037.  At approximately 11:40 a.m. BASS was observed moving the lawn equipment to the rear side of the property.  At this point, surveillance was terminated.  The TFO noted that due to the location of the residence, conducting extended surveillance at this location can be challenging.

16

36.     On July 19, 2022, a grand jury sitting in the Eastern District of Virginia, Richmond Division, returned a three-count indictment against TARELL BASS, a.k.a., "Playboy," Case Number 3:22-cr-108.  Count One charged BASS with Attempted Sex Trafficking of Children, in violation of 18 U.S.C. §§ 1591 (a) (1) and 1594; Count Two charged him with Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422 (b); and Count Three charged him with Travel with Intent to Engage in Illicit Sexual Conduct in violation of 18 U.S.C. § 2423 (b).

37.     On July 25, 2022, this Court issued search warrants and pen register/trap and trace devices (PRTT), case number 3:22-sw-137, for records associated with the **267-993-8951** and phone number **216-468-2483**, which were served on T-Mobile, the cellular provider for those phone numbers.  Information received from T-Mobile indicated the device associated to phone number **267-993-8951** is an Apple iPhone XR NP 64GB BLK, IMEI 356833117458145. The device associated to phone number **216-468-2483** is a "Byodiphone," IMEI 352857113427808.

38.     On August 15, 2022, FBI agents generated a report of toll records for phone number **267-993-8951** from August 1, 2022, through August 15, 2022.  The report produced approximately 209 phone numbers that had been in contact with **267-993-8951** during that time period.  FBI agents conducted query of the 209 phone numbers on a law enforcement database. Approximately 77 phone numbers out of the 209 phone numbers queried were found to be associated with sexual escort advertisements.  Most of the advertisements were found to have been posted on MegaPersonal in Pennsylvania.

39.     On August 16, 2022, FBI agents generated a report of toll records for phone number **216-468-2483** from August 1, 2022, through August 16, 2022.  The report showed

approximately 22 incoming phone calls received from 13 different phone numbers during that time period.  The duration of all the phone calls received was less than one minute, averaging 11 seconds.  Based on this information, the phone number does not appear to be BASS's primary phone.

### BASS's Arrest and Interview

40.     On August 30, 2022, law enforcement officers arrested BASS in Bristol, Pennsylvania, pursuant to an arrest warrant issued in conjunction with his indictment in case 3:22-cr-108.  At the time of his arrest investigators seized the SUBJECT DEVICE from BASS's person.  While the IMEI of the SUBJECT DEVICE cannot be determined without actually conducting a search of the phone, the make and model are consistent with the device described in records from T-Mobile for telephone number **267-993-8951** (see paragraph 37 above).

41.     After his arrest BASS was transported to the FBI Office in Philadelphia for processing.  As FBI agents were escorting BASS to the processing room, BASS indicated he would like an attorney present during questioning.  FBI Agents advised BASS it was his right to have an attorney present during questioning and that they would not ask BASS any questions.  BASS was escorted to a room to wait for processing.  Shortly thereafter, BASS asked agents questions about the investigation and made several unsolicited statements.  BASS was read his Miranda warnings by FBI agents and was advised not to sign the waiver form since he had requested an attorney earlier.  FBI agents explained they would not ask any questions since BASS requested an attorney earlier.  BASS continued to ask questions and made several statements.  FBI agents reiterated multiple times that BASS did not have to talk to them, and they were not asking any questions since he had requested an attorney earlier for questioning.  As they were waiting to begin processing BASS made the following unsolicited statements.

42.     BASS stated that he reached out to females he found on online websites to help them.  BASS said he just texted a girl last night saying, "if you're on that site, something's not right."  BASS said the cartel runs that website (referring to MegaPersonal).  BASS explained he was in Ohio visiting his kids' mother and somebody told him to pick someone up in Richmond.  BASS said that a person told him (BASS) that a 16-year-old girl wanted a pimp and BASS told that person he would go get her.  BASS traveled to Richmond and explained his vehicle broke down at the Wawa and he ran out of gas.  BASS sat at the Wawa gas station and waited for the girl.  BASS believed the police were watching him while he was at the Wawa.  The girl then said she felt weird and didn't want to go with BASS.  BASS was upset because he was in Richmond trying to help someone that did not want his help.  Once BASS left Richmond, he believed people were following him, possibly the cartel or someone wanting to set him up.

43.     BASS said he has helped several girls in the past.  BASS said he rejects pimping and when a girl tells him she wants to sell her body he stays away.  BASS said he was against human trafficking but was all for helping people.

44.     After processing, BASS made additional statements.  FBI agents reminded BASS he did not have to talk, and they would not ask questions since he had requested an attorney.  BASS said he was just trying to help people.  BASS said he could show FBI agents his phone proving how he was trying to help people.  He had girls on his phone beat up and bruised who he is trying to help.  BASS indicated he was supposed to put a girl on a train on Thursday.

45.     BASS asked for access to his phone to retrieve his mother's contact information, which he wanted included as an emergency contact on the U.S. Marshals intake form.  At the same time, BASS attempted to show the agents text threads with two females whom he claimed

to have helped.  One of the females was saved under the name "QUEEN" or "QUEENIE." BASS said that QUEEN had been assaulted by another male.

46.     BASS stated that he hoped to apply for a grant to fund a non-profit organization designed to help girls which he was attempting to start.  BASS looks online for women who either appear to have been beaten or held against their will.  BASS advised that he has been helping girls since Backpage.com was operating.

47.     Your affiant submits that there is probable cause to believe that the SUBJECT DEVICE recovered from TARELL BASS, will contain information relevant to the investigation into criminal violations of 18 U.S.C. § 1591 and 1594 (Attempted Sex Trafficking of a Minor), 18 U.S.C. § 2422(b) (Attempted Coercion and Enticement) and 18 U.S.C. § 2423(b) (Travel with Intent to Engage in Illicit Sexual Conduct).

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

48.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

49.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICE was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICE because:

20

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

50.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICE consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the SUBJECT DEVICE to human inspection in order to determine whether it is evidence described by the warrant.

51.     *Manner of execution.*  Because this warrant seeks only permission to examine the SUBJECT DEVICE that is already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is

reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

52.      I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT DEVICE described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*David Gonzalez*
David Gonzalez
Special Agent
Federal Bureau of Investigation

Sworn and attested to me by the Affiant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on September 23, 2022.

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

## ATTACHMENT A

53.     The property to be searched is: one (1) **Apple iPhone XR serial number DX3FV9LCKXKN** cellular telephone.  This cellular telephone is referred to as the SUBJECT DEVICE in this affidavit.  The SUBJECT DEVICE is currently stored at the FBI Richmond Field Office located at 1970 E. Parham Road, Richmond, Virginia 23228.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the SUBJECT DEVICE described in Attachment A that relate to

violations of 18 U.S.C. § 1591 and 1594 (Attempted Sex Trafficking of a Minor), 18 U.S.C.

§ 2422(b) (Attempted Coercion and Enticement) and 18 U.S.C. § 2423(b) (Travel with Intent to

Engage in Illicit Sexual Conduct) collectively referred to hereafter as "the SUBJECT

OFFENSES," by TARELL BASS and other individuals, including:

    a.      Visual depictions of minors;

    b.      Address books, names, and lists of names and addresses of minors;

    c.      Diaries, notebooks, notes, and other records reflecting physical contacts, whether
real or imagined, with minors;

    d.      Child erotica, including photographs of children that are not sexually explicit,
drawings, sketches, fantasy writings, diaries, and sexual aids;

    e.      Content of communications and attachments related to the SUBJECT OFFENSES
transmitted via any communication method, including but not limited to email,
text message or any secure messaging application;

    f.      Content of communications and attachments, friend and contact lists, group
memberships and postings relating to the SUBJECT OFFENSES in any social
media/networking application or dating application;

    g.      Records and information relating to peer-to-peer (P2P) programs used to share
images of minors or in connection with the SUBJECT OFFENSES;

    h.      Evidence of who used, owned, or controlled the SUBJECT DEVICE at the time
the things described in this warrant were created, edited, or deleted, such as logs,
registry entries, configuration files, saved usernames and passwords, documents,

1

browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondences;

i.     Evidence of software that would allow others to control the SUBJECT DEVICE, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

j.     Evidence of the lack of such malicious software;

k.     Evidence of instances when the SUBJECT DEVICE was attached to other storage devices or similar containers of electronic evidence;

l.     Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the SUBJECT DEVICE;

m.     Evidence of the times the SUBJECT DEVICE was used;

n.     Passwords, encryption keys, and other access devices that may be necessary to access the SUBJECT DEVICE;

o.     Records of, or information about, the SUBJECT DEVICE's Internet activity, including IP connection logs, firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

p.     Contextual information necessary to understand the evidence described in this attachment; and

q.     Information relating to the identity and actions of any coconspirators of BASS's relating to the SUBJECT OFFENSES

2

2.      Evidence of user attribution showing who used or owned the SUBJECT DEVICE at the time the things described in this warrant occurred, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.